IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WALTER C. BURMEISTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 04 C 6853 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Walter Burmeister appeals from the denial of his application for Supplemental Security Income benefits. Both Burmeister and the Commissioner have moved for summary judgment. Our review of the Administrative Law Judge's decision and the record before the Court leads us to conclude that the ALJ's analysis was inadequate in several respects, and thus we reverse and remand for further proceedings.

### Facts

Burmeister applied for Supplemental Security Income in February 2001, alleging that he had become disabled on January 1, 1991. His application was denied initially. On reconsideration, Burmeister requested and received a hearing before an Administrative Law Judge. On January 23, 2003, Burmeister, represented by counsel, testified at a hearing before an ALJ. In a written decision dated May 14, 2003, the ALJ concluded that Burmeister was not

1

disabled and was accordingly ineligible for SSI. Burmeister's request for review of the unfavorable decision was denied by the Appeals Council, thereby leaving the ALJ's opinion as the final decision of the Social Secuirty Administration. He now seeks judicial review of the decision.

At the date of the hearing, Burmeister was fifty-three years old, divorced with two children, and high school graduate. Burmeister worked from 1989 to 1991 as a sizer, a job that involved reshaping hot metal pieces after they came out of a furnace and, according to Burmeister, required him to sit for seven to eight hours a day and to "once in awhile" lift twenty-five pounds. R. 67, 79, 161. Burmeister testified that he was fired from this job after having two seizures. Prior to this period, Burmeister worked for three years as a brake press operator, but he had to quit this job when complications from lymphoma and chemotherapy prevented him from performing his duties. Burmeister has not been gainfully employed since 1991.

Burmeister's principal health complaints are seizures, chronic lower back pain, Hepatitis C, carpal tunnel syndrome, poor vision, and a history of lymphoma and alcoholism. The seizures are the primary disability that Burmeister contends prevent him from working. According to Burmeister, the seizures began approximately twenty years ago. The cause of the seizures is unknown, however, Burmeister was involved in a few car accidents and was injured when he fell from a ladder. The seizures were first diagnosed by doctors at Cook County Hospital in October 1998, and Burmeister was prescribed Phentoin. In September 2001, he was formally diagnosed with epilepsy and was prescribed Dilantin. Burmeister testified that the seizures occur "once a

month, maybe twice a month,"[1] even when he is taking Dilantin. R. 162. The seizures occur both during the day and at night, with no particular pattern. Burmeister stated that it takes him "a couple days" to recover after a seizure. R. 162.

Burmeister also suffers from chronic lower back pain due to degenerative disc disease. His testimony reflects that he can sit for only an hour at a time due to pain. His balance is "not that great anymore," and he has fallen down stairs. R. 167. He "imagine[s]" that he could walk a mile, but he would need to stop about every block and a half. R. 166-67. Though Burmeister had not made any trips to a nearby store the year of the hearing, he believes he walked the five or six miles to the store up to five times during the previous year. R. 170. He stated that he could possibly lift twenty pounds, but that five pounds would be a more realistic depiction of what he could consistently lift. R. 167.

Burmeister further complains that he suffers from complications, including vomiting, related to Hepatitis C. He was diagnosed with Hepatitis C and high liver enzyme levels in March 2001. He has never been treated for the disease, but in 2001, doctors suggested that Burmeister begin taking Interferon. R. 164. In addition, Burmeister "think[s]" that a few years ago, doctors also diagnosed him with carpal tunnel syndrome in his right hand. R. 165. He has some numbness in that hand and is sometimes unable to pick up a fork. Burmeister testified that he "usually . . . can't write" when he is experiencing trouble with his hand, but that this is not often a problem. R. 173.

---

[1] There is mixed evidence in the record as to the frequency of the seizures. In an internal medicine consultative examination for the Bureau of Disability Determination Services, the consulting physician stated that the attacks occur every month to two months. See R. 115. The ALJ, however, noted that Burmeister alleged that the seizures occurred once or twice a month and cited nothing in the record contradicting that claim. The ALJ did state that between April 2002 and the hearing in January 2003, Burmeister had had eight to nine seizures, but we are not told when these seizures occurred.

Finally, Burmeister mentioned that he has problems focusing his eyes – he sometimes cannot focus at all but other times can read for an hour – and complained that his knees hurt every once in awhile. R. 160; 172. Though Burmeister once abused alcohol, he testified that he has not had a drink since April 2002, and that he had been sober for a year before a one week relapse in March 2002. His lymphoma was in remission. Burmeister acknowledged that he no longer saw a doctor on a regular basis for any of his maladies. He testified that it is very difficult for him to get to Cook County Hospital and other clinics, as neither he nor his mother are able to drive.

In April 2001, Dr. Angelito Bernardo performed a consultative examination and evaluation at the request of the Bureau of Disability Determination Services. In addition to noting Burmeister's history of grand mal type seizures, chronic back pain, hepatitis C, carpal tunnel syndrome, knee problems, and history of lymphoma, Bernardo also mentioned that Burmeister complained of a history of heart condition, though he had no current complaints and the heart findings were within normal limits. Bernardo also discovered that Burmeister had a decreased range of motion of the lumbosacral spine from ninety to fifty degrees on flexion.

Dr. Robert Patey also reviewed Burmeister's medical records and submitted a physical residual functional capacity assessment, dated May 17, 2001, consisting of a series of check-offs as to how, if at all, he believed Burmeister was limited. He concluded that Burmeister was occasionally able to lift twenty pounds, frequently able to lift ten pounds, could stand or walk with normal breaks for a total of about six hours in an eight-hour workday, and was able to sit for less than six hours in an eight-hour workday. With respect to postural limitations, Patey checked that Burmeister could never climb ladders, rope, or scaffold, but that he could occasionally

balance, stoop, kneel, crouch, and crawl. He noted no manipulative, visual, or communicative limitations. The report suggests that Burmeister's only environmental limitation is that he must avoid all exposure to hazards, including machinery, heights, etc., due to his seizure condition. In a section titled "additional comments," Patey noted, among other things, that Burmeister had "questionable compliance" with Phentoin, that no ascites or characteristics of liver disease were present, and that his pain was "credible as chronic." R. 150. Patey concluded that Burmeister would be able to perform light work activity with restriction from any exposure to hazards.

The ALJ relied upon these physicians' written evaluations, along with Burmeister's testimony, in determining whether Burmeister was disabled within the meaning of the Social Security Act. No vocational experts testified or were consulted.

To establish disability, a claimant must show that he is unable to engage in any substantial gainful activity due to the existence of a "medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The ALJ employed the familiar five-step sequential inquiry outlined in the Social Security regulations to determine whether Burmeister could engage in substantial gainful activity: (1) is the claimant presently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do the claimant's impairments meet or equal any specific impairments listed within the Code of Federal Regulations which the Commissioner of Social Security acknowledges to be conclusively disabling; (4) are the claimant's impairments of such a nature that they limit his remaining or residual functional capacity to the degree that he is no longer able to perform the duties and demands of a former occupation; and (5) is the claimant unable to perform any other

5

work in the national economy, considering his age, education, and work experience. *Butera v. Apfel*, 173 F.3d 1049, 1054 (7th Cir. 1999).

The ALJ readily determined that Burmeister had not engaged in substantial gainful activity since his alleged onset of disability. Though he concluded that the medical evidence reflected that Burmeister's impairments, including "a disorder of the back and at least histories of seizures and alcoholism," constitute a "severe" impairment at the second step of the analysis, he did not find that Burmeister's impairments met or medically equaled any impairment listed in the federal regulations. R. 18. At step four of the analysis, the ALJ adopted Dr. Patey's assessment that Burmeister could "perform light work subject to prohibitions against exposure to hazards or climbing ladders, ropes, and scaffolds; or more than occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs." R. 19. Thus, the ALJ concluded that Burmeister had the residual functional capacity to perform a restricted range of light work. Next, he surmised that given Burmeister's residual capacity, he could return to his past work as a sizer and possibly even perform his past work as a press operator.

Though the ALJ does not appear to have made a formal finding at the step five level, he did note that Burmeister "can also be expected to be able to adjust to other jobs existing in significant numbers in the economy, within the framework rule 202.13 of Section 2 of Table No. 1 at Appendix 2 of Subpart P at 20 CFR 404." R. 20. The ALJ opined that approximately 1600 sedentary and light unskilled occupations would be available for a person of Burmeister's age, education, and exertional capacity. In short, he concluded that because "claimant can perform past relevant work (as well as adjust to other work existing in significant numbers in the economy)," Burmeister is not under a disability as defined in the Social Security Act.

6

Burmeister contends that the ALJ made several errors in his analysis that merit remand. First, he argues the ALJ failed to properly assess his disorder with respect to listing 11.02 in the federal regulations. Next, he claims that the ALJ's residual functional capacity assessment was unsupported by substantial evidence and failed to provide a function by function assessment. Along the same lines, Burmeister asserts that the ALJ improperly ignored his Hepatitis C, bending limitations, and visual limitations. He further maintains that the ALJ improperly analyzed his ability to perform his past relevant work as a sizer. And finally, Burmeister contends that the ALJ's credibility determination was insufficient and erroneous.

## Discussion

This Court's review of the ALJ's decision is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether the ALJ's findings are supported by substantial evidence. *See Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992). Though the Court may not reevaluate the facts, reweigh the evidence, or substitute its own judgement for that of the Social Security Administration, *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), the case must be remanded if the decision lacks evidentiary support or is articulated insufficiently to permit meaningful judicial review. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). In other words, the ALJ must have built "an accurate and logical bridge from the evidence to her conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

The Court agrees with Burmeister that the ALJ failed to build this necessary bridge between the record evidence and his conclusions. He committed four principal errors in making his determination that Burmeister was not disabled. Any one of these errors by itself would be sufficient to merit remand. The Court reviews each error in turn to ensure that all are addressed

appropriately on remand.

### 1. Listing 11.02

At step three of the sequential analysis, an ALJ must determine whether the claimant is conclusively deemed disabled based on one of the Commissioner's listed impairments. Epilepsy and seizure disorders are evaluated using listings 11.02 or 11.03. During his brief opening statement at the hearing, Burmeister's attorney anticipated that Burmeister's testimony would show that his seizure disorder meets or equals listing 11.02. R. 159. Listing 11.02 requires grand mal or psychomotor seizures that occur "more frequently than once a month in spite of at least 3 months of prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02. This category includes either daytime episodes or nocturnal episodes that manifest residual effects that interfere significantly with activity during the day. *Id.*

The ALJ dismissed Burmeister's contention that he was conclusively disabled with a single sentence: "[T]he evidence does not establish impairments, even in combination, that meet or medically equal any impairment listed in Appendix 1, Subpart P, Regulations No. 4." The ALJ did not mention Listing 11.02, nor did he address whether or not Burmeister's symptoms met the specific criteria of that listing. Though the ALJ's failure to refer to the relevant listing does not alone necessitate reversal and remand, *see Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004), the Seventh Circuit has held that where "an ALJ omits reference to the applicable listing and provides nothing more than a superficial analysis, reversal and remand is required." *Id.* at 370 (citing *Brindisi v. Barnhart*, 315 F.3d 783, 786-87 (7th Cir. 2003)).

The ALJ's reasoning was perfunctory at best. The decision did not sufficiently discuss the evidence regarding the frequency of Burmeister's seizures and did not address whether a

person with one or two seizures per month would fall within Listing 11.02. The ALJ likewise did not address whether Burmeister's other symptoms met the relevant criteria. If the record evidence did not contain sufficiently detailed descriptions of Burmeister's seizures to make this determination, the ALJ had it within his power to obtain this information. Though the claimant has the burden of proving disability, the ALJ has a concurrent duty to develop a full and fair record. *See Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). Failure to do so is cause to remand for additional gathering of evidence. *Id.* Because the ALJ's cursory analysis at step three was so insufficiently articulated to permit meaningful review, the case must be remanded.

## 2. Flawed residual functional capacity assessment

For purposes of the analysis at the fourth and fifth steps of the sequence, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). *See Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The assessment concerns what work-related activities the claimant can perform despite his limitations. *Id.* The RFC must be based on all relevant medical evidence in the record. 20 C.F.R. § 404.1545(e). Moreover, the RFC assessment must identify the individual's functional limitations or restrictions and assess his work-related abilities on a function-by-function basis before expressing the claimant's RFC in terms of the exertional level of work, such as sedentary or light. SSR 96-8p ¶ 4 (1996). This Social Security Ruling makes it clear that a limited ability to sit is among the functions to be considered. *See id.*; 20 C.F.R. §§ 404.1545 & 416.945.

The ALJ reviewed the findings of Dr. Bernardo's consultative examination and the residual functional capacity assessment completed by reviewing state agency physicians. He specifically adopted the state agency physician's findings that Burmeister can perform light work

subject to prohibitions against exposure to hazards, climbing ladders, ropes, and scaffolds, or more than occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs. He thus concluded that Burmeister has the residual capacity to perform a restricted range of light work. The ALJ, however, completely failed to factor in, or at least mention, Burmeister's sitting and bending limitations.[2] Dr. Patey had reported that Burmeister was able to sit less than six hours in an eight-hour workday. This is a significant impairment, as it rules out the majority of sedentary jobs and certain categories of light work jobs.

Similarly, Dr. Bernardo determined that Burmeister could not bend beyond a certain point. The ALJ's omission of this point is significant, as Burmeister would have to bend at the waist occasionally to perform light work. *See Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (claimant with lower back motion reduced to 40 degrees of flexion, as well as other back problems). Though it is conceivable that the ALJ considered these significant limitations, the absence of any indication in his decision that he did so makes it impossible for the Court to determine whether he sufficiently analyzed Burmeister's exertional limitations. *See Young v. Barnhart*, 362 F.3d 995, 1002 (7 th Cir. 2004). Thus, the ALJ again failed to build the necessary accurate and logical connection from the evidence to his conclusion. The Court urges the ALJ to make a more specific and particularized RFC assessment on remand, taking into account Burmeister's sitting, bending, and visual limitations.

---

[2] Burmeister also contends that the ALJ improperly ignored his Hepatitis C and visual limitations when making his RFC assessment. The ALJ did, however, consider Burmeister's Hepatitis C. He noted that Burmeister had been recently diagnosed with the impairment, but had not had a liver biopsy and did not have signs of ascites or a history of vomiting blood, which might suggest variceal bleeding or symptoms of cirrhosis. These statements indicate that the ALJ factored the Hepatitis C into his analysis. Though the ALJ did not mention Burmeister's visual limitations, Dr. Patey's report indicates that Burmeister did not have visual limitations. Burmeister, however, testified that he has difficulty focusing and sometimes is unable to read at all. The ALJ should consider this issue on remand.

10

### 3. Past relevant work

Because the RFC determination forms the crux of the ALJ's decisions regarding a claimant's ability to perform past relevant work or other types of work in the national economy, *see Prince v. Sullivan*, 933 F.2d 598, 602-03 (7th Cir. 1991), the ALJ's deficient RFC finding renders his step four analysis flawed to the extent that the faulty RFC assessment prevented him from considering limitations pertinent to Burmeister's ability to perform his past work.

Moreover, the ALJ failed to sufficiently specify the physical demands involved in Burmeister's prior job as a sizer and to assess his ability to perform these specific tasks. *See Nolen v. Sullivan*, 939 F.2d 516, 518-19 (7th Cir. 1991) (requiring that an ALJ list the specific physical requirements of the previous job and assess, in light of the available evidence, the claimant's ability to perform the listed tasks); *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984). The ALJ described Burmeister's job as a sizer as requiring "handling, grasp and grabbing big objects weighing up to ten pounds occasionally while sitting." R. 20. The ALJ noted that he obtained this description from Burmeister's own account of his previous duties in a work history report he filled out on April 12, 2001. *See* R. 79. But the ALJ failed to mention that this report also indicated that the job required Burmeister to use machines, tools, or equipment, that it involved handling hot pieces of metal, and that he had to sit for eight hours a day. *See* R. 79. Moreover, earlier in the opinion, the ALJ noted that Burmeister had testified that he had on occasion needed to lift up to twenty-five pounds, though the ALJ made no attempt to reconcile the conflicting evidence in his opinion. R. 17. The ALJ ultimately concluded that "[g]iven claimant's residual functional capacity, he can return at least to his past work as a sizer as he performed that work." R. 20.

The available facts simply do not support the conclusion that Burmeister was able to perform the functional activities of a sizer. Had the ALJ included Burmeister's sitting limitation in his RFC assessment, he might have focused on the conflict between the less than six hours per day that the agency's doctors felt Burmeister was capable of sitting and the eight hours Burmeister had reported he had to sit in his former job. Furthermore, the ALJ's RFC assessment specified that Burmeister had to avoid exposure to hazards, including working with machinery. Given that a sizer works with hot metal that comes out of a furnace, it is reasonable to believe that this type of labor involves exposure to hazards. And it does not appear that the ALJ explored the extent to which a sizer uses machinery.

The ALJ opined that Burmeister "may also be able to perform his past work as a press operator," but he again failed to address the specific demands of this job and whether Burmeister is physically able to perform this type of work. In sum, the ALJ did not adequately evaluate the specific demands of Burmeister's previous jobs, nor did he sufficiently connect the dots between Burmeister's limitations and his ability to perform the specific tasks required of a sizer.[3]

Because the ALJ made a conclusive finding at step four of the sequential analysis, he did not need to progress to step five. *See Young*, 362 F.3d at 1000. The ALJ did, however, note that

---

[3] Interestingly, the Commissioner concedes that "the ALJ's RFC finding is inconsistent with Plaintiff's reports and description of those jobs . . . . [t]he Commissioner does not dispute that the ALJ thus erred in his evaluation of Plaintiff's ability to perform his past relevant work." Def's Mem. at 13. Instead, the Commissioner asserts that a Dictionary of Occupational Titles description of an "Arborer" indicates that the job of sizer is light work and is entirely consistent with the ALJ's RFC assessment. The definition of Arborer involves bending metal to form jewelry – specifically, making rings. *See* R. 86. The Court is puzzled by the Commissioner's equation of this job to Burmeister's past work as a sizer. The Commissioner has not cited anything in the ALJ's opinion or the record that indicates that Burmeister's former job involved making jewelry. Moreover, the ALJ did not reference this definition in his opinion. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ.").

Burmeister "can also be expected to be able to adjust to other jobs existing in significant numbers in the economy," and referenced 1600 sedentary and light unskilled occupations that could be identified. R. 20. We need not address whether the ALJ actually made a step five finding – though it is unlikely that the Court would find this excessively brief analysis sufficient for a step five finding – because this conclusion hinges on an RFC assessment that failed to take into account Burmeister's sitting and bending limitations. Notably, a sedentary job is defined as one which involves sitting, yet the ALJ failed to reconcile Burmeister's sitting limitations with his ability to perform sedentary work.

### 4. Credibility determination

Finally, the ALJ's determination that Burmeister's testimony concerning his functional limitations was not credible is not sufficiently specific for the Court to permit meaningful review. An ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p (1996); *see also Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

The ALJ's analysis regarding Burmeister's credibility consisted in its entirety of the following:

> The claimant's testimony, including that of functional limitations, when compared against the objective evidence and evaluated using factors in SSR-96-7p, was not credible. Only some of the objective findings indicate back pathology, but the overall record, including especially claimant's sporadic pursuit of treatment, reports of non-compliance for seizures (i.e., Exhibit B-3F) and activities that include walking to a store five or six blocks away are consistent with the residual functional capacity assessed by the reviewing state agency physicians on May 17,

13

>    2001 and October 12, 2001 that claimant can perform light work subject to prohibitions . . . .

R. 19. It is unclear what testimony concerning limitations the ALJ intended to reference. Based on the Court's review of the record, Burmeister's testimony did not directly contradict any of the physicians' findings. If the ALJ was referring to Burmeister's reported disabling back pain, there is evidence in the record that his description of the pain as chronic was credible. *See* R. 150. Likewise, the ALJ did not explicate the "objective evidence" to which he referred.

In addition, the factors cited by the ALJ that led him to discredit Burmeister's testimony do not necessarily do so. Social Security Ruling 96-7p makes it clear that an adjudicator may not draw inferences about the veracity of an individual's symptoms based on that person's failure to pursue regular medical treatment, without first considering the claimant's explanation or other evidence in the record that might explain the infrequent or irregular medical visits. *Id.* at 7. The ALJ referenced Burmeister's "sporadic pursuit of treatment" but failed to delve into possible explanations for Burmeister's sporadic medical visits.

The ALJ's apparent reliance on Burmeister's purported noncompliance with treatment is also questionable. Courts have held that it is the effect of the claimant's alleged noncompliance with treatment on the frequency of seizures that is important, not the noncompliance by itself. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Though the ALJ appropriately took this evidence into account in assessing the believability of Burmeister's complaints, he did not attempt to reconcile the fact that Burmeister had eight to nine seizures during the nine month period prior to the hearing despite consistently taking Dilantin.

Finally, Burmeister's ability to walk to a store five or six blocks away does not necessarily

undermine or contradict a claim of disabling pain. *See Zurawski*, 245 F.3d at 887. The ALJ made no attempt to describe how Burmeister's ability to walk five or six blocks demonstrated that he had exaggerated the magnitude of his pain or his ability to sit for prolonged periods.

The ALJ should have explained the inconsistencies between Burmeister's daily activities, his complaints of pain, and the medical evidence. *See id.* at 887. The Seventh Circuit has instructed that

> [i]f the allegation of pain is not supported by the objective medical evidence in the file and the claimant indicates that pain is a significant factor of his or her alleged inability to work, then the ALJ must obtain detailed descriptions of claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain . . . .

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994) (citation omitted). In the present case, it is questionable whether Burmeister's pain is unsupported by the objective evidence in the record. If the ALJ believed that it was, he should have explained the inconsistencies, thereby bridging the gap.

Furthermore, the ALJ's "apparently post-hoc statement turns the credibility determination process on its head by finding statements that support the ruling credible and rejecting those statements that do not, rather than evaluating the [applicant's] credibility as an initial matter in order to come to a decision on the merits." *Brindisi*, 315 F.3d 783, 788 (7th Cir. 2003). In other words, the ALJ used the RFC to assess Burmeister's credibility rather than determining whether Burmeister's statements were credible and factoring any credible testimony into the RFC assessment.

In short, the ALJ's credibility determination lacks the detail needed to permit meaningful judicial review, as the reasons given do not build an accurate and logical bridge between the

evidence and the result.

## Conclusion

For the reasons stated above, the Commissioner's motion for summary judgment [docket no. 15] is denied. The Court grants Burmeister's motion for summary judgment [docket no. 13] and remands his case for further proceedings consistent with this opinion.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 28, 2005